**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**ROCK HILL DIVISION**

| | |
|---|---|
| Charlotte Ann Smith, )<br>)<br>                Plaintiff, )<br>)<br>v. )<br>)<br>Business Development Corporation, )<br>Certified Development Corporation, )<br>Branch Bank and Trust, )<br>US Small Business Administration, )<br>)<br>                Defendants. )<br>_____) | Civil Action No. 0:10-61-JFA -JRM<br><br><br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |
| Mary Joe Moore, )<br>)<br>                Plaintiff, )<br>)<br>v. )<br>)<br>Business Development Corporation, )<br>Certified Development Corporation, )<br>Branch Bank and Trust, )<br>US Small Business Administration, )<br>)<br>                Defendants. )<br>_____) | Civil Action No. 0:10-255-JFA -JRM |

These cases were originally filed in the Court of Common Pleas for York County. On January 8, 2010, Defendant, the United States of America ("USA") removed the case filed by Plaintiff, Charlotte Ann Smith ("Smith"), to this Court. On February 2, 2010, Defendants, Business Development Corporation of South Carolina ("BDC") and Certified Development Corporation ("CDC"), removed the case filed by Plaintiff Mary Joe Moore ("Moore") to this Court. Because the Plaintiffs are proceeding *pro se*, these cases were automatically referred to the undersigned for

pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 73.02(B)(2)(e) (D.S.C.). As these cases involve the same Defendants and identical allegations, they have been consolidated by the undersigned for pretrial purposes.

Defendants have filed motions to dismiss, or motions to dismiss with an alternative for summary judgment. Plaintiffs have filed motions for summary judgment. Since Plaintiffs are proceeding *pro se*, orders pursuant to Roseboro v. Garrison 528 F.2d 309 (4th Cir. 1975) have been issued advising them of their responsibility to respond to Defendants' motions. Because these dispositive motions are of record, this Report and Recommendation is entered for the Court's consideration.

**Background**

The complaints[1] cite and summarize a real estate foreclosure action litigated in York County, Business Dev. Corp. of S.C. v Fort Mill Academy, LLC, et al., C/A No. 2006-CP-46-2085 ("the foreclosure action"). Plaintiffs' present allegations arise from, and are directly related to, the foreclosure action.

Plaintiffs' claims and the pending motions are difficult to understand and analyze without an understanding of the foreclosure action and the transactions which led to it. The record, primarily the attachments to BDC's motion to dismiss ("BDC ___"), shows the following:

1. It appears that in January of 1997, Plaintiffs sold a child daycare business, Fort Mill Academy, LLC ("FMA") and the real estate upon which it was located to Betty Brindle. BDC financed the transaction by lending FMA $345,000 secured by the real

---

[1]Plaintiff's motions to amend their complaint have been denied by an order filed contemporaneously herewith.

estate upon which FMA was located. Brindle also secured the loan with a mortgage on her residence to BDC. (BDC, 6).

2. "BDC is a South Carolina business development corporation whose purpose is to promote the economic development in South Carolina by assisting small businesses primarily by providing these businesses a source for commercial loans not usually undertaken by traditional lending institution." (Beck Aff.).

3. The United States of America, through the Small Business Administration ("SBA") guaranteed 75% of the BDC loan to FMA. (Grimes Aff.).

4. Branch Bank & Trust Company of South Carolina ("BB&T") purchased the SBA guaranteed portion of the loan from BDC. (*Id.*).

5. In December of 2002, BDC repurchased the guaranteed portion of the loan from BB&T. (*Id.*).

6. On May 5, 2004, Smith and Moore assumed "the BDC loan and all instruments evidencing and securing the BDC loan and agreed to perform all obligations and undertakings...existing or arising under the Note and BDC Loan Documents." (BDC, 6). FMA, CSM, Inc. and Brindle remained liable and obligated to BDC. (*Id.*).

7. The loan went into default as of January 1, 2006. (*Id.*).

8. The foreclosure action was filed on August 10, 2006. FMA, Smith, Moore, Brindle and others were named defendants. (*Id.*).

9. Smith and Moore filed an Amended Answer and Counterclaim through counsel, Adam Fisher, Jr., Esquire and Leroy J. Dubre', Esquire, on February 7, 2007. The

counterclaims alleged tortious interference with contractual relationship and a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). (BDC, 3).

10. Forest Craig Wilkerson, Jr., Esquire ("Wilkerson") was appointed Special Referee pursuant to the South Carolina Rules of Civil Procedure by the Clerk of Court. (BDC, 2).

11. At a hearing on December 13, 2007, counsel for Smith and Moore voluntarily dismissed the counterclaim for tortious interference with prejudice. (BDC, 4).

12. The trial proceeded on April 30, 2008. Wilkerson filed an "Order and Judgment of Foreclosure and Sale" on June 9, 2008. The order specifically found that BDC had not violated the SCUTPA. (BDC, 6).

13. Counsel for Smith and Moore withdrew and on July 2, 2008 Smith filed *pro se* motions. One sought recusal of BDC's attorney, Sherwood M. Cleveland ("Cleveland") because he had an alleged conflict of interest and he "made damaging remarks that influenced witnesses, not to testify to all the facts (play it dumb, play it without memory)." The other motion sought recusal of Wilkerson due to an alleged conflict of interest and a new trial. (BDC, 7).

14. The motions were denied after a hearing held on July 8, 2008. (BDC, 8).

15. Smith filed a *pro se* notice of appeal. (BDC, 9).

16. The appeal was dismissed by the South Carolina Court of Appeals due to Smith's failure to comply with the South Carolina Rules of Appellate Procedure. (BDC, 10).

**Discussion**

**1. USA**

The USA has moved to dismiss the claim against it pursuant to Rule 12(b)(1), Fed.R.Civ.P., asserting that this Court lacks jurisdiction.

In their eighth cause of action, Plaintiffs allege that "the US SBA failed through negligence in their responsibility of oversight on a loan guaranteed by the US taxpayers." The USA filed a motion to dismiss. Plaintiffs filed a response and the USA filed a reply brief.

The USA is entitled to sovereign immunity, i.e., it cannot be sued without its consent. The Federal Tort Claims Act ("FTCA") is a comprehensive scheme by which the USA has waived its sovereign immunity to allow civil suits for negligent acts of its agents. Dalehite v. United States, 346 U.S. 15 (1953). A plaintiff may only sue the USA, and a federal court lacks subject matter jurisdiction over claims asserted against federal agencies or individual federal employees under the FTCA. Myers & Myers, Inc. v. United States Postal Service, 527 F.2d 1252, 1256 (2d Cir. 1975).

However, the wavier of sovereign immunity under the FTCA is conditional. Before filing a complaint in United States District Court, the aggrieved party must first present an administrative claim to the appropriate agency. 28 U.S.C. § 2675(a). The filing of the administrative claim is a jurisdictional prerequisite which cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994). The aggrieved party must submit the administrative claim, utilizing Standard Form 95, including a claim for monetary damages in a sum certain for the alleged injury to the agency. 28 C.F.R. § 14.2(a) and (b). The agency then investigates the claim and attempts informal resolution. 28 C.F.R. §§ 14.6 and 14.8. If the agency denies the claim, the claimant may file suit in District Court within six months of the mailing of the denial. 28 C.F.R. § 14.9(a).

An affidavit of Elliott O. Cooper, SBA District Director for South Carolina, is attached to the USA's motions to dismiss. According to Cooper, neither Smith nor Moore has ever presented an administrative claim to the SBA as required by regulation. Plaintiffs implicitly concede that they have not filed an administrative claim with the SBA. Essentially, they make two arguments. First they argue that Smith's "attempts to contact Ms. Lowder [of the SBA in Columbia] and discuss the situation [orally] satisfies the Administrative claim requirement." Second, Plaintiffs provide a list of "agents" contacted to complain about the foreclosure action and copies of complaints to and responses from various individuals and entities. According to the list, Plaintiffs sent Lowder a "complaint" in 2009, but no copy is attached. The only written documentation from the SBA provided by Plaintiffs, is a copy of a facsimile from an SBA official which confirmed a conversation about concerns with the BDC dated June 19, 2008.

Plaintiffs have not shown that they filed an appropriate written claim stating a sum certain with the SBA. Therefore, the USA's motion to dismiss should be granted.

**2. BB&T**

Plaintiffs allege "that BB&T as provider of the loan principal failed through negligence in their responsibility of oversight." (Complaint, seventh cause of action). BB&T argues that the claim against it should be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P., because (1) it was not a party to the foreclosure action which is the center of this litigation; (2) it did not make, underwrite, or service the BDC loan; and (3) it was not an agent of the other defendants.

Since the parties have presented matters outside the pleadings, the undersigned construes BB&T's motion under Rule 56. An affidavit of Lori H. Beck, Senior Vice President and Associate General Counsel for BB&T, is attached to its motion. She avers that although "BB&T is a

stockholder and member bank of BDC" it "is in no manner an agent of BDC."  Plaintiffs submit in opposition a portion of the Loan Participation Agreement by which BB&T purchased the SBA guaranteed portion of the BDC loan, together with the Standby Agreement by which Smith and Moore acted as guarantors of Brindle's loan with BDC, and a "Summary" which appears to be BB&T's rationale for purchasing a portion of the loan.

The record does show some relationship between BB&T and BDC.  However, there is nothing in the record to show that BB&T was an agent for BDC in the making, underwriting, or servicing of the loan.  The documents show that BB&T decided to purchase the guaranteed portion of the loan primarily based on Brindle's experience and expertise as a teacher and Plaintiffs' Standby Agreement to guarantee the loan.  BDC repurchased the guaranteed portion of the loan in 2002.  Thereafter, in May of 2004, Plaintiffs assumed Brindle's loan.  Nothing in the record reflects that BB&T had any connection with the loan after the repurchase or assumption, or during the foreclosure action.  BB&T was not a party to the foreclosure action because it no longer had any interest in the loan.

BB&T's motion should be granted.  Plaintiffs have not shown that BB&T had any duty with respect to oversight of the loan.

### 3. BDC and CDC

Plaintiffs raise numerous claims against BDC and a single claim of negligence against CDC which is similar to the negligence claims against BB&T and the USA.  BDC and CDC filed motions to dismiss in each case.  Plaintiffs did not respond to the motions.  At a hearing held on May 20, 2010, and in an order issued on May 24, 2010, Plaintiffs were given the opportunity to file other

material in opposition to the motions to dismiss pending at the time, as well as material supporting their motion for summary judgment. Plaintiffs filed their responses on June 7, 2010.

      a. <u>Res judicata and Collateral Estoppel</u>

BDC argues that several of the claims asserted against it by Plaintiffs are barred by the doctrines of res judicata and collateral estoppel. Plaintiffs have failed to address these arguments.

The doctrine of res judicata embodies two distinct preclusion concepts: (1) claim preclusion; and (2) issue preclusion. <u>Marrese v. American Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 376 n. 1, (1985); <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 77 n. 1 (1984). Claim preclusion refers to the preclusive effect of a judgment in foreclosing litigation of matters which should have been raised in an earlier suit, while issue preclusion refers to the effect of a judgment in precluding the relitigation of a matter actually litigated and decided. *Id.* Since the earlier suit in this case was the state foreclosure action, South Carolina law on res judicata (and collateral estoppel) are controlling in the present case. <u>Weston v. Margaret J. Weston Med. Ctr. Bd. of Dirs</u>, 2007 WL 2750216, *1 (D.S.C. Sept. 20, 2007).

In South Carolina "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." <u>Hilton Head Ctr.of South Carolina, Inc. v. Public Serv. Comm'n of South Carolina</u>, 362 S.E.2d 176, 177 (S.C. 1987). South Carolina courts use various tests in determining whether a claim should have been raised in a prior suit: "(1) when there is identity of the subject matter in both cases; (2) where the cases involve the same primary right held by the plaintiff and one primary wrong committed by the defendant; (3) when there is the same evidence in both cases; and [ ] (4) when the claims arise out of the same transaction or occurrence." <u>Plum Creek Dev. Co., Inc. v. City of Conway</u>, 512 S.E.2d 106, 109 n. 3

(S.C. 1999) (citing J. Flanagan, South Carolina Civil Procedure 649-650 (1996)). To establish res judicata, the defendant must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit. Riedman Corp. v. Greenville Steel Structures, Inc., 419 S.E.2d 217 (S.C. 1992); Sealy v. Dodge, 347 S.E.2d 504 (S.C. 1986).

If the primary right and duty and alleged wrong are the same in each action, there is an identity of subject matter. *See* Jimmy Martin Realty Group, Inc. v. Fameco Distrib., Inc., 386 S.E.2d 803 (S.C. Ct.App.1989); Briggs v. Newberry County School District, 989 F.2d 491, 1993 WL 66558 (4th Cir. March 11, 1993) (unpublished) (employee's federal action under 42 U.S.C. § 1983 barred by res judicata where she brought action before county schoolboard and appealed to the South Carolina Court of Common Pleas on basis that no good cause existed for her dismissal, but did not present any of her constitutional claims in support of her position during the state proceedings); Allen v. Greenville County, 712 F.2d 934 (4th Cir. 1983) (federal civil rights action alleging that County terminated a contract to provide janitorial services for racially discriminatory reasons was barred by res judicata because federal claim could have been raised in plaintiff's earlier state court action for breach of contract).

Collateral estoppel, sometimes referred to as issue preclusion, bars a party from relitigating an issue that was decided in a prior action, regardless of whether the claims in the first action, and the second action are the same. Zurcher v. Bilton, 666 S.E.2d 224 (S.C. 2008). The party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment. Beall v. Doe, 281 S.C. 363, 369, n. 1, 315 S.E.2d 189-190, n. 1 (Ct. App. 1984). South

Carolina recognizes non-mutual collateral estoppel, i.e., mutuality of parties in the first and second actions is not required "where the party against whom the estoppel is asserted had a full and fair opportunity to previously litigate the issues." Snavely v. AMISUB of South Carolina, Inc., 379 S.C. 386, 398, 665 S.E.2d 222, 228 (Ct.App. 2008), citing Beall, 281 S.C. at 370-371.

Review of the record shows an identity of the parties since Plaintiffs and BDC were all parties to the foreclosure action. The undersigned also concludes that the subject matter of the foreclosure action and the present litigation is the same. The South Carolina Supreme Court differentiated the subject of the first action from the cause of action and the object of that action:

> The cause of action has been described as being a legal wrong threatened or committed against the complaining party. And the object of the action is to prevent, or redress the wrong by obtaining legal relief. The Subject of the action is, clearly, neither of these; it is not the wrong which gives the plaintiff the right to ask the interposition of the Court; nor is it that which the Court is asked to do for him, but it must be the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and this ordinarily is the property, or the contract and its subject matter, or other thing involved in the dispute.

Harth v. United Ins. Co. of America, 266 S.C. 1, 5, 221 S.E.2d 102, 104 (1975) quoting Brice v. Glenn, 165 S.C. 509, 164 S.E. 302, 303-304 (1932). It is clear that the subject matter of the foreclosure action was the note and mortgage and that the counterclaims imposed by the Plaintiffs herein in the foreclosure action were directly involved in that dispute. It is also clear that the subject matter in the present suit is the same. This conclusion is supported not only by the claims asserted in Plaintiffs' complaints filed in this Court, but also by the documents Plaintiffs filed on June 7, 2010 to support their positions. All of those documents relate directly to the foreclosure action. For instance, Plaintiffs have filed several depositions taken in connection with that action. Other

documents included are affidavits relating to issues that were raised, or could have been raised, during the foreclosure action.

Having concluded that there is identity of the parties and subject matter between the foreclosure action and the present action, the issue is whether the claims alleged against BDC were adjudicated or could have been adjudicated in the foreclosure action.

(1) Counterclaims Alleged in the Foreclosure Action

Plaintiffs filed counterclaims in the foreclosure action for tortious interference with a contract and violation of the SCUTPA. In the counterclaim for tortious interference with a contract, Plaintiffs alleged that a BDC representative (Mr. Page) contacted the parents of children and advised them that the daycare was financially troubled. In the SCUTPA counterclaim, Plaintiffs alleged BDC engaged in unspecified acts that violated the law. (BDC, 3). The tortious interference of contract claim was dismissed with prejudice at a pretrial conference. The SCUTPA claim was tried during the foreclosure hearing. The foreclosure court made detailed findings of fact and found that the contacts with daycare employees by Mr. Page did not violate the SCUTPA.

It is clear that the issue of BDC contacts with daycare employees was fully litigated during the foreclosure hearing. The allegation that Mr. Page directly contacted the parents of children attending the daycare center was dismissed with prejudice. The doctrine of res judicata precludes Plaintiffs' claim that BDC violated their rights to privacy by making contacts with employees of the daycare (or parents). Plaintiffs cannot avoid the doctrine of res judicata by now characterizing the claim as a violation of a right to privacy. Obviously, such a theory could have been argued during

11

the foreclosure proceedings, but Plaintiffs chose not to do so.[2] Therefore, the undersigned concludes that Plaintiffs' third cause of action and all allegations that BDC made third party contacts with respect to the loan that was foreclosed are barred by the doctrine of res judicata. (i.e., Complaint causes of action six, ten and twelve).

(2) Other Issues Decided in the Foreclosure Action

Plaintiffs' first, second, and fourth causes of action all allege wrongdoing by BDC in connection with the mortgage before the foreclosure action was instituted. They allege that BDC altered the terms of the loan agreement, misapplied funds in violation of the agreement, and failed to provide a proper accounting. All these issues were directly addressed by the foreclosure court.

During the foreclosure action, Plaintiffs herein filed a motion for summary judgment asserting that the Assumption Agreement whereby they assumed Brindle's loan contradicted an earlier agreement. A hearing was held and the foreclosure court issued an order denying the claim. The foreclosure court held:

> Defendants further argued in this regard that the alleged ambiguity and inconsistency of the two agreements resulted in "an improper allocation of funds" by BDC regarding the $28,500 paid by the Defendants in November and December of 2003 pursuant to the Agreement dated November 24, 2003 (Exhibit "6" of the Page Affidavit). Specifically, Defendants argued that the two agreements required that BDC (1) capitalize the then outstanding accrued and unpaid interest by adding same to the loan balance as principal and (2) use the $20,083.74 (the sum remaining from the $28,500 payment after deduction of the $8,416.26 in legal fees paid to BDC attorneys pursuant to the Agreements) to apply to future loan payments. Defendants filed an affidavit by one Michael Millinger stating that, based on such assumption, the loan would not have gone into default until after April, 2006.

---

[2]The same is true as to a violation of the Fair Debt Collection Practices Act to which Plaintiffs made reference in their third cause of action.

> The Court reviewed the two agreements attached as Exhibits "6" and "7" to the Page Affidavit and reviewed the accounting spreadsheet attached as Exhibit "8" to the Page Affidavit. The Court finds and concludes both factually and legally that (1) these two agreements are not ambiguous or inconsistent and clearly provided for the application of the $20,083.74 to the payment of unpaid accrued interest and late fees and (2) the accounting and application of funds by BDC was properly and correctly handled.

(BDC, 5)

The undersigned finds that the claim presented in Plaintiffs' first cause of action was litigated in the foreclosure action.

Further, in its Order and Judgment of Foreclosure and Sale, the foreclosure court carefully calculated the amount due and owing under the terms of the loan documents and concluded that an adjusted balance of $361,708.32, plus interest, was owed at that time. (BDC, 6, p. 6). Therefore, the undersigned concludes that all issues relating to the application of funds and accounting (causes of action one, two, and four) were litigated during the foreclosure action, and barred by the doctrine of res judicata as to BDC.

Plaintiffs also complain about BDC's action during the trial. They alleged that BDC bribed and intimidated witnesses to procure false testimony (Complaint, fifth cause of action) and misrepresented, suppressed, and "bait and switched" evidence during the trial (Complaint, thirteenth cause of action).

After the foreclosure hearing, counsel for the Plaintiffs herein withdrew. Plaintiffs then filed *pro se* post-trial motions which included an allegation that counsel for BDC had improperly influenced witnesses and presented false testimony. (BDC, 7). The foreclosure court had a hearing on the motion at which Smith appeared *pro se* and attempted to represent Moore. Smith filed documents with the court in support of her allegations. The foreclosure court denied Plaintiffs'

13

motions finding "no evidence regarding [Plaintiffs'] assertion that Mr. Cleveland influenced the witnesses." (BDC, 8).

The undersigned finds that the claims raised in Plaintiffs' fifth and thirteenth causes of action were raised in the foreclosure action by way of post-trial motions. Plaintiffs were given a full and fair opportunity to present evidence on these claims at the post-trial hearing. Since the foreclosure court ruled against Plaintiffs, these claims are barred by the doctrine of res judicata.

(3) Compulsory Counterclaims Not Raised in the Foreclosure Action

Under South Carolina law, the doctrine of res judicata bars not only those issues litigated in the preceding action, but also any compulsory counterclaims which could have been raised therein. Crestwood Golf Club, Inc. v. Potter, 328 S.C. 201, 217, 493 S.E.2d 826, 835 (1997). Rule 13(a), SCRCP, states in part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

In North Carolina Fed.Sav. & Loan Ass'n v. DAV Corp., 298 S.C. 514, 381 S.E.2d 903 (1989), the South Carolina Supreme Court adopted a standard that a counterclaim is compulsory only if a "logical relationship" exists between the claim and the counterclaim. The issue before the court was whether certain claims raised in a second suit were compulsory counterclaims in a preceding foreclosure action. The court specifically found that claims of breach of a subsequent oral contract to arrange additional financing, breach of an accompanying joint venture agreement, breach of fiduciary duty, wrongful dissolution of the joint venture agreement, and violation of the SCUTPA were all compulsory counterclaims which had to be asserted in the foreclosure action.

BDC also argues that Plaintiffs' claims that it had improper contacts with Brindle, insofar as they were not third party contacts decided during the foreclosure action, are compulsory counterclaims which were required to be asserted in the earlier action. The undersigned agrees.

Plaintiffs allege that BDC advised Brindle to not make payments to them on a mortgage, which caused Brindle to cease making payments, which in turn, caused them to default. (Complaint, sixth cause of action). Plaintiffs also allege that BDC required Brindle to pledge stock to it which Brindle did not actually own. (Complaint twelfth cause of action).

The undersigned concludes that both these allegations have a "logical relationship" to the foreclosure action because they are alleged to affect the enforceability of the note by BDC.

    b. Rule 8

Rule 8(a)(2), Fed.R.Civ.P., requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." CDC has moved to dismiss the negligence claim against it (Complaint, ninth cause of action), and BDC has moved to dismiss a claim made by Smith that she was "threatened"[3] (Smith Complaint, fourteenth cause of action) pursuant to Rule 12(b)(6) for the failure to comply with Rule 8(b)(2).

The purpose of a motion for judgment on the pleadings is to test the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint

---

[3]According to Smith the threats constitute "a serious criminal act" and unprofessional conduct.

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.' " Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

Even though a *pro se* complaint is entitled to liberal construction, "a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681-682 (D.C.Cir. 2009) quoting Iqbal, 129 S.Ct. at 1950. *See also* Cuyler v. South Carolina, 2010 WL 1416743, *3 (D.S.C. Apr. 5, 2010) and Owens v. Thrower, 2010 WL 1409423, *2 (D.S.C. Mar. 22, 2010).

The claim against CDC and the claim that BDC threatened Smith are devoid of factual allegations. Based on the record, the involvement of CDC is unclear, but CDC was not a party to the foreclosure action. Even though Plaintiffs allege negligence in the oversight of the mortgage loan, there is no factual allegation which would indicate that CDC had any duty with respect to Plaintiffs.[4] Likewise the claim against BDC for the use of threatening language is insufficient. There is nothing

---

[4] In addition the claim against CDC is barred by the doctrine of collateral estoppel since the foreclosure court conclusively found that there was no irregularity in the administration of the loan. (*see* discussion above).

in the claim (or in the record before the Court) to show when, where, and under what circumstances the threat(s) was made. The mere fact that someone at BDC may have made a comment which Smith considered threatening, without more, is not actionable under South Carolina law.

These claims lack "facial plausibility" and should be dismissed.

**4. Plaintiffs' Motion for Summary Judgment**

Motions for summary judgment are governed by Rule 56, Fed.R.Civ.P. Both Plaintiffs have filed similar motions for summary judgment. Their motions should be denied because they do not comply with the requirements of the rule. As stated by the Fourth Circuit:

> Summary judgment is not solely a defensive mechanism: Rule 56 expressly contemplates the availability of summary judgment to a claimant. *See* Fed.R.Civ.P. 56(a). That a movant bears the ultimate burden of proof or persuasion ... is no obstacle to a summary judgment award in favor of that party, so long as the requirements of Rule 56 are otherwise satisfied. *Cf.* Meyer v. Worsley Cos., Inc., 881 F.Supp. 1014, 1021 (E.D.N.C.1994) (awarding summary judgment to defendant who, under relevant statutory scheme, bore ultimate burden of proof, when defendant made requisite Rule 56 showing and plaintiff failed to respond with demonstration of existence of genuine dispute of material fact). Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. *See* Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 521-22 (4th Cir.2003).

Plaintiffs' motions for summary judgment are basically a restatement of their claims which are discussed above. The arguments are not supported by any evidence such as affidavits, depositions, interrogatories, etc. Attached to the motions are copies of the FDCPA, a Federal Trade Commission news release, and summaries of cases dealing with the SCUTPA and the South Carolina

Consumer Protection Act. Further, the undersigned has reviewed the documents filed by Plaintiffs on June 7, 2010, and finds no support for their present claims in them. As noted earlier, these documents contain depositions taken in connection with the foreclosure action and affidavits relating to the issues raised and litigated in the foreclosure action.

The undersigned concludes that Plaintiffs' motions fail to show material facts supporting their claims. <u>Blankenship v. Warren Co. Sheriff's Dep't</u>. 939 F.Supp. 451, 456 (W.D.Va. 1996) ("The moving party bears the burden of persuasion that no genuine issue of material fact exists"). Plaintiffs have not shown they are entitled to summary judgment.

### Conclusion

Based on a review of the record and the foregoing discussion, it is recommended that:

1. The motions to dismiss of BDC and CDC be **granted**;

2. The motions to dismiss of the USA be **granted**:

3. The motions to dismiss of BB&T be **granted**; and

4. The motions of the Plaintiffs for summary judgment be **denied**.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina
August 24, 2010

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).